UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL LEE LONG JR.,<br><br>Defendant. | 3:15-CR-30118-RAL<br><br>OPINION AND ORDER GRANTING<br>MOTION FOR TURNOVER |

The government moves for the turnover of money held in Defendant Michael Lee Long Jr.'s inmate trust account. This Court grants the government's motion for the reasons explained below.

I.  **Background**

In 2016, a jury convicted Long of assault with a dangerous weapon, simple assault, and two firearm offenses. Doc. 67. As part of the sentence, this Court ordered Long to pay a $310 special assessment and $3,396.81 in restitution to his victim. Doc. 123. Long's judgment stated that a lump sum payment of $310 was "due immediately" with the "balance due" in accordance with the following installment schedule:

> Payment of the total restitution and other criminal monetary penalties shall be due in regular quarterly installments of 50% of the deposits in the defendant's inmate trust account while the defendant is in custody, or 10% of the defendant's inmate trust account while serving custody at a Residential Reentry Center. Any portion of the monetary obligation(s) not paid in full prior to your release from custody shall be due in monthly installments of $50, such payments to begin 60 days following your release.

1

Doc. 123 at 7.

As of mid-September 2021, Long had paid the $310 special assessment and $1,160.00 towards his restitution. Doc. 135 at ¶ 4; Doc. 135-1. In January 2022, the government learned that Long had accumulated $2,091.59 in his inmate trust account. Doc. 132 at ¶ 5; Doc. 135 at ¶ 5. At the government's request, the Bureau of Prisons (BOP) encumbered the money in Long's trust account from further withdrawal. Doc. 135 at ¶ 5. The government then moved for an order authorizing the BOP to turn over 50% of these funds to pay Long's remaining restitution. Doc. 132. The government cited 18 U.S.C. §§ 3613(a), 3664(k), and 3664(n) in support of its motion, but did not discuss the Eighth Circuit's recent decision in United States v. Kidd, 23 F.4th 781 (8th Cir. 2022), holding that § 3664(n) does not apply to accumulated prison wages. This Court therefore directed the government to brief the Kidd decision's effect on its motion. Doc. 133.

The government's response details the source of the money in Long's trust account and explains that it is now seeking less money than it initially requested. Docs. 134, 135. According to a report filed by the government, only $40.00 of the $2,091.59 in Long's trust account came from prison wages.[1] Doc. 135 at ¶¶ 5–7; Doc. 135-2. The largest deposit was $2,000 from "RST CARES." Doc. 135-2 at 1. In light of Kidd, the government is no longer seeking any money that Long earned through prison wages. Rather, it seeks $1,025.79, which represents 50% of the money in Long's trust account after subtracting the $40 in prison wages.

Long did not respond to the government's motion despite having been mailed the motion, this Court's order directing a brief on Kidd, and the government's response. This Court

---

[1] This report shows all the deposits in Long's trust account from October 30, 2021 to January 28, 2022. Doc. 135-2. The government explains that the discrepancy between the total amount of deposits ($2,745) and the total amount remaining ($2,091.59) is the result of money Long spent on commissary and phone and email use. Doc. 135 at 2.

nevertheless gave Long twenty-two additional days to respond, directing Long to explain whether he objects to the government's motion, what portion of the $2,091.59 encumbered by the government is prison wages, and whether he disputes that the $2,000 deposit in his trust account from "RST CARES" constitutes a stimulus payment issued to citizens in response to the COVID-19 pandemic. Doc. 136. Long did not respond and the deadline for doing so has now passed.

## II.   Analysis

### A. Statutory Framework and Government's Authority for Motion

District courts cannot order restitution in a criminal case without statutory authorization. United States v. Balentine, 569 F.3d 801, 802 (8th Cir. 2009). The statute authorizing restitution here was the Mandatory Victim Restitution Act (MVRA). The MVRA requires defendants convicted of crimes of violence and certain other crimes to pay full restitution to their victims. 18 U.S.C. §§ 3663A(a)(1), (c)(1); 3664(f)(1)(A). A court ordering restitution under the MVRA must set a payment schedule at sentencing detailing the manner of payment and the length of time over which the payments are to be made. 18 U.S.C. §§ 3572(d), 3664(f)(2)–(3); United States v. McGlothlin, 249 F.3d 783, 785 (8th Cir. 2001). As stated above, this Court set such a schedule for Long. Doc. 123 at 7.

The government's motion seeking the money in Long's trust account relies on two statutes, both of which contain mechanisms for enforcing restitution orders. Doc. 134-1; Doc. 132 at 3. Under the first statute, 18 U.S.C. § 3613, a restitution order constitutes a "lien in favor of the United States" on the defendant's property. § 3613(c). Section 3613(a) authorizes the government to enforce a judgment ordering restitution "against all property or rights to property of the person" ordered to pay restitution unless excepted by statute. 18 U.S.C. § 3613(a); § 3613(f) (stating that § 3613 applies to restitution orders); see also United States v. Beulke, 892 F. Supp. 2d 1176, 1179

(D.S.D. 2012) (discussing the three types of exceptions contained in § 3613(a)). As relevant here, cash in an inmate's trust account is generally not exempt from enforcement.[2] 18 U.S.C. § 3613(a)(1); United States v. Toole, No. 21-10651, 2022 WL 503736, at *2 (11th Cir. Feb. 18, 2022) (per curiam) (concluding that a stimulus payment under the CARES Act deposited in an inmate's trust account was not exempt from a restitution order); United States v. Rand, 924 F.3d 140, 144 (5th Cir. 2019) (per curiam); United States v. Wade, 8:04CR462, 2022 WL 170643, at *4 (D. Neb. Jan. 19, 2022).

The second statute, 18 U.S.C. § 3664, recognizes that a defendant's financial circumstances may change. First, § 3664(k) authorizes the sentencing court to "adjust the [restitution] payment schedule, or require immediate payment in full" based upon "any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." Second, § 3664(n) states that "[i]f a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed."

### B. The Kidd Decision

The district court in Kidd ordered the defendant to pay over $60,000 in restitution under the MVRA. 23 F.4th at 783. The judgment said that a lump-sum payment was "due immediately," and if not paid immediately "any unpaid financial penalty imposed shall be paid during the period of incarceration at a rate of not less than $25.00 quarterly, or 10% of the defendant's quarterly earnings, whichever is greater." Id. The defendant agreed to participate in the BOP's Inmate

---

[2] As the Eighth Circuit recognized in Kidd, however, Congress did limit the *amount* of "earnings" that can be garnished from a defendant to pay restitution. 18 U.S.C. § 3613(a)(3); 15 U.S.C. § 1673; Kidd, 23 F.4th at 784 n.2.

Financial Responsibility Program[3] when he began his sentence. Id. at 783–84. In keeping with his judgment, the defendant promised to pay $25.00 quarterly from his inmate trust fund while incarcerated. Id. at 784.

The government eventually learned that the defendant had accumulated over $5,000 in his inmate trust account. Id. Relying on 18 U.S.C. § 3664(k) and (n), the government moved for an order authorizing the BOP to apply most of that money to the defendant's restitution obligation. Id. The defendant claimed that he had earned this money from various sources in prison, and the government did not challenge this assertion. Id. at 784–85. The district court granted the government's motion based solely on § 3664(n). Id. at 785.

The Eighth Circuit reversed, holding that § 3664(n) does not apply to accumulated prison wages in the trust account of an inmate participating in the BOP's Inmate Financial Responsibility Program. Id. at 787. It reasoned that § 3664(n)'s focus was on "single transactions from outside sources" and that applying the statute to prison wages "could significantly threaten prison security and administration by hurting inmate morale, discouraging inmates from gaining the benefits of prison work, and interfering with the BOP's carefully constructed Inmate Financial Responsibility Program that includes provisions for paying restitution obligations while incarcerated." Id.

As for § 3664(k), the Eighth Circuit recognized that "even a gradual accumulation of prison wages could in some circumstances constitute a material change in the defendant's economic circumstances." Id. at 787 (cleaned up and citation omitted). Because the sources of the money in the defendant's trust account were unknown, the Eighth Circuit remanded the case to the district

---

[3]This program is "designed to encourage inmates with a financial obligation such as restitution that cannot be paid at the time of commitment to earn compensation through UNICOR or other institution work assignments to satisfy that obligation." Kidd, 23 F.4th at 783–84 (cleaned up and citation omitted).

court to determine whether § 3664(k) applied or whether some of the money in the account included the receipt of substantial resources from outside sources that would be subject to § 3664(n). Id. at 787–88.

Kidd is not a categorical ban on using prison wages to pay restitution. Indeed, Kidd recognized that an accumulation of prison wages could in some circumstances be seized under § 3664(k).[4] Id. at 787. Rather, Kidd simply held that § 3664(n) does not apply to prison wages in an inmate's trust account.

### C. The Government is Entitled to the Funds it Requests

The Kidd decision is not a problem here, as the government is no longer seeking any money that Long earned through prison wages. Instead, the question is whether the government can seize $1,025.79 from Long's trust account under 18 U.S.C. §§ 3613, 3664(n), and 3664(k). Courts have required that COVID-19 stimulus payments be applied to restitution obligations, "either as 'substantial resources' under Section 3664(n) or because of a 'material change' in the defendant's economic circumstances" under § 3664(k). United States v. Shaw, No. 05-20073-JWL, 2021 WL 3144836, at *2 (D. Kan. July 26, 2021) (quoting 18 U.S.C. § 3664); see Toole, 2022 WL 503736,

---

[4] Nor does Kidd prohibit courts, at the time of sentencing, from ordering that restitution and fines be paid by regular withdrawals of prison wages deposited in the prisoner's trust account. See United States v. Pacheco-Alvarado, 782 F.3d 213, 219 (5th Cir. 2015) (upholding district court sentence imposing a monthly payment schedule as a proportion of future prison wages conditioned upon those wages materializing in fact); United States v. Vanhorn, 344 F.3d 729, 730–31 (8th Cir. 2003) (upholding a district court order requiring that restitution be paid "on an installment basis in the way the Bureau of Prisons handles this through its Inmate Financial Responsibility Program at the rate of no less than 50% of the funds available to defendant during incarceration"); McGlothlin, 249 F.3d at 784–85 (stating that § 3664(f) required the district court "to fashion a payment schedule that designated a specific percentage of [the defendant's] monthly earnings while incarcerated toward his restitution obligation"); United States v. Gomez, 24 F.3d 924, 927 (7th Cir. 1994) (holding that a prisoner's wages in his trust account may be used to pay fines); United States v. Turner, 975 F.2d 490, 498 (8th Cir. 1992) (upholding the district court's calculation of a defendant's ability to pay a fine based on the defendant's likely prison earnings through the Inmate Financial Responsibility Program).

at *2 (upholding district court decision that a stimulus payment the defendant received under the CARES Act constituted a "substantial resource" under § 3664(n)); Wade, 2022 WL 170643, at *3 (concluding that an influx of stimulus funds "represents receipt of substantial resources" that "must be applied to outstanding restitution obligations" under § 3664(n)); United States v. Brown, No. 4:17-CR-51 RLW, 2021 WL 1945855, at *2 (E.D. Mo. May 14, 2021) (concluding that stimulus payment constituted a material change of economic circumstances under § 3664(k)).

Here, Long received $2,000 from "RST CARES," and does not dispute that this money was a stimulus payment issued to citizens in response to the COVID-19 pandemic. This payment constitutes receipt of a "substantial resource" under § 3664(n), is subject to the government's lien on Long's property, and does not qualify for any exemptions. Toole, 2022 WL 503736, at *2; United States v. Korbe, No. 2:09-cr-0005-NR, 2020 WL 1929256, at *5 (W.D. Pa. Apr. 21, 2020) (explaining that § 3664(n) "appears to view what is or isn't 'substantial' from the viewpoint of the defendant's income while incarcerated"). The payment must therefore be applied to Long's outstanding restitution obligation. Requiring Long to pay $1,025.79 is also consistent with his judgment, which requires him to pay restitution in "regular quarterly installments of 50% of the deposits in [his] inmate trust account while [he] is in custody." Doc. 123 at 7. Beyond that, the government's motion does not even seek the full value of the stimulus payment and will not leave Long insolvent. Indeed, he will still have over $1,000 in his trust account, which is a significant amount in the prison setting.

### III.  Conclusion

For the reasons stated above, it is

ORDERED that the Government's Motion to Authorize Payment From Inmate Trust Account, Doc. 132, is granted to the extent that it seeks $1,025.79 from Long's trust account. It is further

ORDERED that the BOP is authorized to turn over to the Clerk of Court, and the Clerk of Court shall accept, funds in the amount of $1,025.79 currently held in the BOP trust account for the following inmate:

> Michael Lee Long Jr.
> Register Number: 15001-273.

The Clerk shall apply these funds as payment for the criminal monetary penalties owed by Long in this case.

DATED this 9th day of March, 2022.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE